## Staunton.

LEE v. BUMGARDNER.

86  315
87  145

86  315
93  337

SEPTEMBER 26, 1889.

REAL ESTATE—*Reservation of minerals—Subsequent conveyance.*—A tract of land divided into separate parcels, No. 6 passed to plaintiffs, and No. 11, whereon was the abandoned furnace called " Cotopaxi," passed to defendants. In the deed to lot No. 6 is this language: "Subject to the right of the owners of Cotopaxi furnace to raise ore from a bank or banks on lot No. 6." Defendants were engaged in hauling large quantities of iron ore from the banks on lot No. 6. Plaintiffs enjoined them. After suit brought, defendants obtained a conveyance of the ore banks from the holders of the title thereof. HELD: Plaintiffs acquired no right to the iron ore by the deed granting lot No. 6, but reserving the iron ore as stated. Nor could the iron ore pass as appurtenant to No. 11, granted to defendants. So, the iron ore remained the property of the vendor until he conveyed it to defendants; and the conveyance, though made after suit brought, is a valid defence to a bill to restrain them from mining the ore.

Appeal from decree of the circuit court of Augusta county rendered December 11, 1888, in the chancery cause of Stephen S. Lee and son et als. against Bumgardner et als. The plaintiffs (the appellants) filed their bill in said court August 12, 1887, praying an injunction to restrain the defendants (the appellees) from committing a trespass on their lands in the bill mentioned, which injunction was granted. Opinion states the case.

*R. F. Bell,* for the appellants.

*James Bumgardner* and *G. M. Cochran,* for the appellees.

LACY, J., delivered the opinion of the court.

This case is as follows: On the 24th day of August, 1855, Elisha Bryan conveyed his ten-thousand-acre tract of land, lying on the western slope of the Blue Ridge mountains and the flat country beyond, to trustees for the benefit of creditors. Upon this land was a small hot-blast charcoal furnace, capable of turning out about ten tons of good foundry iron per week. This furnace had been run for a number of years, and the ore, charcoal, and timber necessary for its operation had been taken from different parts of the said ten-thousand-acre tract. In the year 1855 Bryan ceased to operate the furnace, and conveyed the same as stated. The trustees divided the tract into fifteen separate tracts of land, and "No. 6" was sold to Lilly, and passed by regular chain of title to the appellants. "No. 11" was sold to John and Isaac Newton, and by them to David, John, and Andrew J. Zink, in part, and the residue was sold by judicial sale to the appellees, it being about forty-four acres, and containing the old furnace site. The furnace has long been a thing of the past, and it would be difficult to discover the spot where it once stood.

In the deed to lot No. 6 the following language appears: (1) "Subject to the right of the owners of Cotopaxi furnace to raise ore from a bank or banks on lot No. 6"; (2) "To use the road leading to said ore bank or banks for hauling ore from said banks to said furnace, which rights were reserved at the time of the sale, and are hereby reserved to the owners of the said furnace." The appellees, owners of the furnace site, are engaged in hauling large quantities of iron ore from the ore banks on lot No. 6, and sending it away for sale, claiming to be the absolute owners, in fee, of the said ore banks.

The appellants contend that the reservation in the deed to them creates only an incorporeal hereditament, to be enjoyed in common with the owners of the fee simple, when taken in its broadest sense; and that, under the circumstances of this

case, it is still more limited, and is restricted to the right to haul ore to the Cotopaxi furnace, and over a particular road only, and from bank or banks then open at the time of the sale; and that the appellees ought not to be allowed to add a greater burden to their land by hauling ore to be carried elsewhere than to the Cotopaxi furnace; that the demand at this furnace must be limited, whereas the demand elsewhere in the markets of the world might be practically unlimited.

The circuit court, on the first branch of the controversy, as to the right of the appellees to raise ore, held that the reservation created an exclusive right to raise ore, and that the appellees were the exclusive owners of the iron ore on the lot No. 6 in fee simple; dissolved the injunction and dismissed the bill without prejudice to the privilege of either party in interest to institute proper proceedings, either at law or in equity, for the purpose of ascertaining the rights of parties in connection with the road between the mines and the Cotopaxi furnace. From this decree the case was brought here by appeal.

The grant of the iron ore in the lands of the vendor is a grant of the substance, is a corporeal hereditament, and is exclusive. But the right to take ore from the lands of the vendor, being granted for a specific purpose or in a limited quantity, is an incorporeal hereditament, and is not exclusive. So the conveyance of the right to take ore under the grantor's tract of land is a conveyance of the entire ownership of the ore in place beneath the grantor's land, and the minerals beneath the surface of land may be conveyed by deed distinct from the right to the surface, and is a corporeal hereditament that passes by deed. Effect should be given to the intention of the parties in the determination of a question of this sort, and when the intent is to give the usufruct and power of disposal, obviously the title must be held to pass. Unopened mines may be conveyed, and the grantee takes more than a right issuing out of land or exercisable therein; he takes the mines themselves, carrying an unrestricted right to take and

carry away all the ore therein—an exclusive corporeal right. And the same is true of a reservation of such rights, and it was held at an early day in the mining state of Pennsylvania that in a deed conveying a tract of land—excepting, however, and forever reserving the liberties and privileges of the grantor and others in like interest to dig, take, and carry away all the stone coal that might thereafter be found on the tract—that the deed conveyed no part of the stone coal to the grantees, and that it remained reserved or ungranted as a corporeal hereditament. *Benson* v. *Miners' Bank*, 20 Penn. State R., 370.

It cannot be questioned, I think, that the ownership of a bed or seam or bank of iron ore or other mineral is a corporeal interest in land. In this case the owner sold the surface of the land, retaining the minerals which lie below the surface, and, as was said by the court in *Caldwell* v. *Fulton*, 31 Penn. St., 475, "as his whole interest was corporeal before the sale, and as by his deed only the surface passed, that which remains ungranted must be corporeal." The learned justice saying in that case: "Coal and minerals in place are land. It is no longer to be doubted that they are subject to conveyance as such. Nothing is more common in Pennsylvania than that the surface right should be in one man and the mineral right in another. It is not denied, in such a case, that both are land-owners—both holders of a corporeal hereditament. Our English ancestors, indeed, found difficulty in conceiving of a corporeal interest in an unopened mine, separate from the ownership of the surface, because livery of seizin was, in their minds, inseparable from a conveyance of land, and livery could not be made of an unopened mine. The consequence was that they were disposed to regard such rights as incorporeal, though they are not rights issuing out of the land, but the substance itself. In this state, however, livery of seizin is supplied by the deed and its registration, and there is nothing incongruous in considering a grant of the substratum a grant of land as much as is a conveyance of the surface itself. It is often, by

far, the most valuable, and sometimes embraces all for which the land is worth owning."

These principles are well settled in other states, and are sound in principle. *Johnstown Iron Co.* v. *Cambria Iron Co.*, 32 Penn. St., 246; American Decisions, 72, 783, and cases cited; *Knight* v. *Indiana Coal and Iron Co.*, 47 Ind., 110; *Marble Company* v. *Ripley*, 10 Wallace, 363; *French* v. *Brewer*, 3 Wallace, Jun'r, 365.

The appellants, not having purchased the iron ore beneath the surface, acquired no right thereto by the deed granting the tract, but reserving the iron ore in the manner stated. And these remained the property of the vendors, and could by them be granted by deed only. They could not pass as appurtenant to the tract of land granted to the appellees, for the reason that land cannot be appurtenant to other land, nor pass with it as belonging to it. *Leonard* v. *White*, 7 Mass., 6; *Harris* v. *Elliott*, 10 Peters, 25; Co. Litt., 121, 126; *Jackson* v. *Hathaway*, 15 Johns., 447; Washburne on Easements, 341. While land adjoining that granted, and used therewith, may pass as parcel, it may not as appurtenant. So, in this case, the ownership of the ore banks in question, remaining in the vendors, could not pass as appurtenant to lot No. 11, and remained ungranted until 1888, not having been granted in any antecedent deed until after suit was brought, when the surviving trustee conveyed to the appellees the said ore bank.

At the time of the institution of the suit here the appellees were trespassers upon the rights of appellants, not because the appellants were, in any sense, the owners of the ore bank, but the appellees, not being the owners of the ore bank, had no right to dig the surface up, which did belong to the appellants, and they, being mere strangers, could not justify their invasion of the soil of another by the outstanding rights of the original vendors. But the defendants, after suit brought, perfected their title by obtaining from the person holding the title to the ore banks a conveyance thereof; and while this title was pro-

cured after suit was brought, it having been so procured without interference with the rights of the plaintiffs, the appellants here, constitutes a valid defence to the complaint of the plaintiffs, so far as digging for ore is concerned.

As far as the right of way is concerned, the contention of the appellants that the defendants cannot extend their rights thereto beyond their grant, so as to burden the servient tenement more than by their grant they are authorized to do, still, as the failure of the extended right of way cannot affect the ownership of the ore banks, and as the circuit court has not decided but waived this question, and has rendered a decree without prejudice to the assertion of the rights of either party, either in equity or at law, the appellants have not been prejudiced on this subject by the decree complained of; and, taken as a whole, there appearing no error therein to the prejudice of the appellants' rights, the same must be affirmed.

The case of *Gloningel* v. *Franklin Coal Company* (93d American Decisions, 720), relied on by the appellants, is to be distinguished from the case of *Caldwell* v. *Fulton,* and from a case like this. That was a grant for $6 50, of the free right to dig coal at the foot of the mountain, on the grantor's land, and carry it to the grantee's blacksmith shop, doing as little damage as possible in the uses aforesaid, and was not the grant either of the subject nor of the exclusive right to dig coal.

The distinction is drawn in that case very clearly by the judge who delivered the opinion of the court; and in his notes to that case Mr. Freeman has cited the cases which most clearly define the distinction between the grant of a corporeal interest in minerals and the right to the use—the right to take minerals to a special extent, not the exclusive right to the subject itself. There is no error in the decree appealed from, and the same must be affirmed.