## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### BARKSDALE v. PARKER'S ADM'RS.

#### December 4th, 1890.

1. CORPOREAL HEREDITAMENT—*Reservation.*—Right reserved in vendor to take ore, is land, not an easement, and cannot pass as an appurtenant to other land. *Lee* v. *Bumgardner*, 86 Va., 315.
2. IDEM—*Partition—Reservation in decree—Case at bar.*—In suit to partition lands, decree directed that the mineral rights in the whole land remain undivided, the purchaser of one of the tracts acquires no interest in the mineral rights.
3. APPELLATE PRACTICE—*Record—Additions.*—Code, sec. 3459, authorizes selections from the completed record, and not additions after final decision. And deed placed among the papers, without being filed or referred to in the proceedings, becomes no part of the record on appeal by being copied into the transcript by order of the judge under said section.

Appeal from decree of circuit court of Pittsylvania county, rendered September 21st, 1889, in a chancery suit of Louisa Parker against Elijah Parker's administrator and heirs, on a petition filed therein by C. T. Barksdale. The decree being adverse to Barksdale, he appealed. Opinion states the case.

*John Gilmer*, for the appellant.

*Jas. M. Tredway, Staples & Munford* and *Geo. C. Cabell*, for the appellees.

LACY, J., delivered the opinion of the court.

In January, 1883, the bill was filed by one Louisa Parker against the administrator and devisee of her father, Elijah Parker, deceased, praying for a construction of his will, and for a division or sale of the real estate devised therein. And with the answer of one of the devisees of the testator was filed a contract executed by all of the devisees of the testator, appointing an agent to lease all the minerals on all of the devised lands for three years.

The court appointed commissioners to divide the lands into six equal parts, and allot the several parcels; but, by the common consent of all the parties in interest, and in order to effectuate the said contract, which was executed July 1st, 1882, and to reserve the mine leased and already operated thereunder, the court, in its decree, provided that, in making said division, it is expressly agreed by said devisees, that said commissioners are not to include the land and mine leased by Corbin & Hatcher, *nor are they to take into consideration*, in estimating the value of said land, any minerals on any portion thereof, the mineral rights in the whole of said land, by consent of parties, *being retained*, and are to be held as the *undivided* property of the devisees aforesaid, subject to the future order of the court, or future disposition by said parties.

The division of the land was made accordingly, and the commissioners reported the same to the court, saying: "We have not considered any damages to lands that might arise by reason of being mined for ores or minerals, except as to lot No. 6, where mining is now being carried on."

The court confirmed the report, there being no exceptions thereto   Lot No. 3 was allotted to Elizabeth Craft, one of the daughters, and a devisee of the testator; and the controversy in this suit has arisen concerning this share or parcel so allotted to Elizabeth Craft, in the following manner: The said Elizabeth, shortly after the division and allotment aforesaid, died, and a suit was instituted to sell the said share so allotted to her for division among *her* children, under the style of *Bailey*

*and Wife* v. *Craft and others.* This land was sold by the sheriff, under the decree of the court so directing, on the 6th day of June, 1885, to C. T. Barksdale, the appellant here. On the 18th day of December following, the sale was confirmed by the court, and the sheriff was directed to collect the bonds for the purchase-money, and, when they were fully paid, to convey to the purchaser the title to said land by deed with special warranty, *subject, however,* to the *limitation in respect to minerals,* provided for in the decree of April term, 1883, in the case of *Louisa Parker* v. *Elijah Parker's Adm'r and others.* In April, 1888, C. T. Barksdale, the appellant, and the purchaser of the Craft lot, No. 3, filed his petition in the *Bailey* v. *Craft* suit, setting forth his purchase and the decree directing a deed to him, when he had fully paid the purchase-money, reciting the provision of the said decree above mentioned, to-wit: "Subject, however, to the limitation in respect to minerals, provided for in the decree of April term, 1883, in the case of *Louisa Parker* v. *Elijah Parker's Adm'r and others.*" That petitioner had paid the whole purchase-money, and *conveyance of title was made to him in accordance with the said last-mentioned decree.* The said petitioner recited the decree of the April term, 1883, in the *Parker* v. *Parker* suit, by which the lands of Elijah Parker were partitioned, and says that it was therein provided "that all of the lands devised by Elijah Parker, deceased, should be divided amongst his devisees with reference alone to their agricultural value, and irrespective of any minerals on any or all of them; and that all the minerals on said lands then discovered, or thereafter discovered, should be participated in equally by said devisees." The said tract of 210 acres (the Craft lot, No. 3,) was sold subject to this arrangement, and conveyed to him, subject to the right of the devisees to whom the other tracts have been assigned to work mines on any part of it. It is thought to contain iron ore in quantity and of much value, which said parties may find it to their interest to develop.

That barytes is being mined on the lands of other devisees under said will, and had been mined, to *the knowledge of* your petitioner, long before his purchase. That he claims the right, by reason of his purchase of the Craft land (lot No. 3), to participate in the proceeds of the barytes mines, because of the above-recited facts.

The deed to Barksdale, mentioned and recited by him as above, was copied and certified and placed in the papers of the cause, but never filed; and, as it was never filed nor noticed in any way by any decree in the cause, objection was made by Barksdale to its being copied with the transcript; but, the matter being referred to the judge, under section 3459 of the Code of Virginia, whether this deed should be copied as part of the record or not, when the said judge ordered the same to be so copied, after final decree in the cause. The decree in the cause of September 21st, 1889, appealed from here, decided as to this question raised by C. T. Barksdale in his petition, that "the effect of the agreement embodied in the decree of the April term, 1883, in the first named cause (*Parker* v. *Parker*), was to separate the mining privilege upon the lands devised by Elijah Parker, deceased, from the said lands, and invest the same in the devisees under said will in common; that said Barksdale, the said purchaser, had actual notice of said agreement and reservation. The court is therefore of opinion, and doth decide, that said C. T. Barksdale took the 210 acres of land, mentioned in his petition, subject to the reservation of the mining privilege aforesaid, which was not sold nor intended to be sold to him; and doth further decide that the minerals upon the whole of the lands devised by said Elijah Parker belong to his devisees," and dismissed the petition of Barksdale, with costs.

From this decree Barksdale, the purchaser, appealed, upon the ground—first, because the contract entered into by the devisees of E. Parker, in July, 1882, which was recognized and acted on by the court at the April term, 1883, *manifestly created*

*an easement on each and every part of the lands so devised.* Citing Fauntleroy, J., as saying, in the case of *Linkenhoker* v. *Graybill,* 80 Va., 839, that "easements follow the land into the hands of an assignee," "and the division of the dominant estate does not destroy the easement," &c. Also citing *Hill* v. *Miller,* 24 Amer. Dec., 218.

The circuit court having decided, as we have seen, by its decree of September 21st, 1889, that the reservation of the right to take ore under the lands of the grantor is a reservation of the entire ownership of the ore in place beneath the land in question, and is exclusive, and the vendee of lands subject to such reservation takes no interest in the ore so reserved; that unopened mines reserved constitute something more than a right issuing out of land, or exercisable therein, the mines are themselves reserved, retaining thereby an unrestricted right to take and carry away all the ore therein—an *exclusive corporeal right.*

In this decree we think there is no error, as this court decided in the case of *Lee* v. *Bumgardner,* 86 Va., 315, on the 17th day of September, 1889, that in a deed conveying a tract of land, excepting, however, and forever reserving, the liberties and privileges of the grantor and others in like interest, to dig, take, and carry away all the ore that might thereafter be found on the tract, that the deed conveyed no part of the ore reserved to the grantees, and that it remained reserved or ungranted as a corporeal hereditament. Citing *Benson* v. *Bank,* 20 Pa. St., 370, saying, "It cannot be questioned that the ownership of a bed or seam or bank of iron ore or other mineral, is a corporeal interest in land." See the cases there cited.

The appellant, not having purchased the ore beneath the surface, acquired no right thereto by the deed granting the tract, but reserving the ore in the manner stated, and this re-

mained the property of the vendors and has not been granted. Such a right could not pass as appurtenant to the tract granted, because land can never be appurtenant to other land nor pass with it as belonging to it. *Leonard* v. *White*, 7 Mass., 6.

The case of *Linkenhoker* v. *Graybill, supra,* which concerned an easement only, is not in point here. The right reserved to take ore in the vendor is a reservation of the substance, is a corporeal interest in land, is land, and the owner of such a right is a land-owner. It is not an easement upon or over or issuing out of land, and cannot pass as an appurtenance to other land.

The second assignment of error is that there is nothing in the record to show that there was any reservation at the sale at which appellant purchased. This is sufficiently answered by the citations from the record already made herein. This reservation is conspicuous from first to last throughout all the transactions of the appellant in this case. But if there were no other evidences, the admissions of the appellant in his petition, set forth above, are quite sufficient. The deed copied in the record, never having been filed therein, is no part of the record, and cannot be made so by the proceeding had under section 3459 of the Code.

That section refers to selections to be made from the record as already completed, and is not intended to authorize additions thereto after final decision.

But in this case the deed is not necessary to the attainment of justice, as it is recited in substance by the petitioner in his petition, and, being so admitted, it was unnecessary for the appellees to file it.

The third and last assignment of error is that, as the land purchased by the appellant has the burthen of easement, it should have the benefit derived by the imposition of a similar burthen upon the other tracts of land. But, from what has gone before, it is clear that no such burthen exists, and no such

benefit, there being no easement and no servient and no dominant tenement in this case, but a division of the land—a severance of the freehold.

There is no error in the decree complained of, and the same must be affirmed.

DECREE AFFIRMED.