## Wytheville.

### THE VIRGINIA COAL & IRON COMPANY v. KELLY.

JULY 2, 1896.

Absent, Harrison, J.

1. CO-TENANTS—*Different Owners of Soil and Minerals—Adverse Possession—Purchase of Outstanding Title.*—Although a co-tenant cannot take advantage of any defect in the common title by purchasing an outstanding title or incumbrance, and asserting it against his companions in interest, yet the owner of the surface of the land and the owner of the minerals under it, where each holds a separate and distinct title, are neither joint tenants, nor tenants in common. They are not the owners of undivided interests in the same subject, but are the owners of distinct subjects of entirely different natures. The title to the freehold of the one, either in the surface or the minerals, cannot be acquired by adverse possession of the other, and the purchase of the outstanding title by the one does not enure to the benefit of the other. In the case at bar the evidence does not support the claim of a resulting trust or a constructive trust in favor of the appellant.

2. CHANCERY JURISDICTION—*Cloud on Title of one in Possession of Land—Void Deed Conveying Minerals.*—The holder of the legal title to land, who is in possession, may come into a court of equity to have a cloud removed from his title. He has no adequate remedy at law. A deed which purports to convey the minerals in land, though void on its face, constitutes a cloud on the title which a court of equity, in a proper case, will remove.

Appeal from a decree of the Circuit Court of Wise county, pronounced April 10, 1895, in a suit in chancery wherein the appellant was the complainant, and the appellee was the defendant.

*Amended and affirmed.*

The opinion states the case.

*E. M. Fulton, J. F. Bullitt* and *R. A. Ayers,* for the appellant.

*Duncan, Mathews & Maynor,* for the appellee.

RIELY, J., delivered the opinion of the court.

In 1855 a patent was issued by the Commonwealth to one Henry H. Horton for 134 acres of land on Pigeon Creek, and in November, 1863, he conveyed the land to Lawson W. Vance, who took and held possession thereof until his death.   He left a widow and two infant sons as his heirs at law.   They remained a year or so on the land, when his widow removed to the west, taking the children with her, and leaving the land in charge of J. M. Clarkston, who, in consideration of the rent to be received therefrom and certain property left with him for the purpose, was to pay taxes on the land.

Clarkston never paid any of the taxes, but allowed the land to be returned delinquent.   At the sale made thereof for taxes in 1873, it was bought by M. V. Kilbourn, from whom Clarkston redeemed it in 1875 by paying the back taxes, and the required ten *per cent.* interest thereon, and took an assignment from Kilbourn of his purchase.   In 1881, Clarkston had the land surveyed, and procured a deed therefor from the clerk of the court on May 10, 1881.

This land lies within the boundaries of the patent of Taylor, Fields, and Johnson for 62,000 acres; and E. K. Hyndman, having become the owner of 48,200 acres thereof, which included the 134 acres, in October, 1881, made a compromise with Clarkston, whereby the latter, for the price of fifty cents per acre, conveyed by deed dated October 14, 1881, to Hyndman " all the coal, iron, stone, and other minerals of whatever name, nature, and description, and all of the timber trees and other trees of every kind and description, in, upon, and under the surface " of the said land, but

reserved the right " to use and take timber from any part of said land for fire-wood, rails, and other farm purposes, to be used upon said premises." Clarkston warranted the lands so conveyed against the claim of Vance and all persons claiming under him. By deed bearing date the same day, Hyndman conveyed to Clarkston the said tract of 134 acres, but excepted and reserved all the " coal, iron ore, stone, and other minerals, timber, &c." granted and conveyed to him by Clarkston, in his deed.

Subsequently, on June 14, 1884, Clarkston sold and conveyed to Mathias Kelly for the sum of $300 " all of the surface right" of the said land as the same was conveyed to him by Hyndman.

In 1887, Hamilton Vance, one of the heirs of Lawson W. Vance, returned to this State, and made claim to Clarkston for the land. Negotiations took place between Vance, Clarkston, and Kelly, which resulted in the payment by Kelly to the widow and heirs of Lawson W. Vance of the sum of $150 for the land, and the conveyance of the same by them to him on February 28, 1887. Clarkston agreed to refund to Kelly $60 of the purchase money he had received, and gave a deed of trust on his home tract of land to secure its payment. Clarkston never paid any part of the $60, nor was the deed of trust ever enforced.

The Virginia Coal and Iron Company bought from Hyndman his interest in the 48,200 acres referred to, which included the minerals and timber in the tract of 134 acres, and the same was conveyed to it on May 6, 1882.

Kelly having commenced to cut a large number of poplar trees standing on the land, the appellant, in 1893, filed its bill to compel him to convey to it all the minerals and timber on the land, and to pay for the trees which he had cut. Kelly filed his answer in which he admitted that he had sold the trees as charged in the bill, but averred that ever since February 28, 1887, the date of the deed from the heirs

of Vance, he had claimed as his own in fee the entire land, including everything on it or under it, and denied any right of the complainant thereto, or compensation for the trees so sold.

The complainant based its claim to have Kelly convey to it the minerals and timber on the land, and to pay for the trees, upon several grounds.

First, that Clarkston paid the money, or a part of it, for the conveyance from the heirs of Vance to Kelly, and that a trust thereby resulted in favor of Clarkston, which by reason of his warranty, enured to the benefit of the complainant as the grantee of Hyndman. The evidence, however, shows that Kelly paid the entire amount to the heirs of Vance, and that Clarkston paid no part of it. There was therefore nothing to create a resulting trust in favor of Clarkston.

It was also argued that the acquisition by Kelly of the true title from the Vance heirs, with knowledge of the conveyance by Clarkston of the minerals and timber to Hyndman, and the claim of the complainant thereto as the grantee of Hyndman, converted Kelly into a constructive trustee of the titles to the minerals for the benefit of the complainant; but without following the learned counsel for the appellant in his ingenious argument to establish such contention, it is sufficient to say that the claim of a constructive trust is likewise not sustained.

The main ground relied upon by the complainant was that Kelly, as the owner of the surface of the land under the conveyance from Clarkston, and the Virginia Coal and Iron Company, as the owner of the minerals and the timber, were tenants in common; and that such being their relation to each other, the purchase of the outstanding title from the Vance heirs by Kelly enured to the benefit of his co-tenant, the complainant.

The general doctrine on this subject is thus stated by an eminent text writer:

"A co-tenant cannot take advantage of any defect in the common title by purchasing an outstanding title or incumbrance and asserting it against his companions in interest. The purchase is, notwithstanding his designs to the contrary, for the common benefit of all the co-tenants. The legal title acquired by him is held in trust for the others, if they choose, within a reasonable time, to claim the benefit of the purchase, by contributing, or offering to contribute, their proportion of the purchase money." Freeman on Co-tenancy, section 154.

It is not questioned that this is the established doctrine in Virginia. *Buchanan* v. *King's Heirs,* 22 Gratt. 414; *Forrer* v. *Forrer's Ex'or et als.* 29 Gratt. 134; and *Pillow* v. *South-West Va. Imp. Co.,* 92 Va. 144. But are Kelly, as the owner of the surface of the land, and the Virginia Coal and Iron Company, as the owner of the minerals and the timber in and upon the same, co-tenants?

Land includes everything belonging or attached to it. It includes the surface, and whatever is contained within or beneath the surface. It includes the minerals buried in its depths, or which crop out of its surface, and the woods and trees growing upon it. 2 Blackstone's Com., 17–19; 2 Minor's Inst., 4; and *Stuart* v. *Pennis,* 91 Va. 688.

And it is now a familiar doctrine that in these various subjects separate and distinct freeholds may be created and owned by different persons by separate and independent titles. One may own the surface, another the coal, and another still some other mineral, all within the same parcel of land. Each may have a fee or less estate in his respective part. Washburn on Real Prop., 12, and 2 Wash. on Real Prop. 345; *Caldwell* v. *Fulton,* 31 Pa. St. 475; S. C. 72 Amer. Dec. 760; *Caldwell* v. *Copeland,* 37 Pa. St. 427; S. C. 78 Amer. Dec. 436; *Armstrong* v. *Calwell,* 53 Pa. St. 287; *Williams* v. *Gibson,* 84 Ala. 228; S. C. 5 Amer. St. R. 368; and *Lillibridge* v. *Lackawana Coal Co.,* 143 Pa. St. 293; S. C. 24 Amer. St. R.

544, and the note thereto; *Lee* v. *Bumgardner*, 86 Va. 315; and *Barksdale* v. *Parker's Adm'r*, 87 Va. 141.

Said Strong, J., in *Caldwell* v. *Fulton, supra:* "Coal and minerals in place are land. It is no longer to be doubted that they are subject to conveyance as such. Nothing is more common in Pennsylvania than that the surface right should be in one man and the mineral right in another. It is not denied, in such a case, that both are land owners, both holders of a corporeal hereditament."

In *Caldwell* v. *Copeland, supra*, Woodward, J., said: "There is no more reason why mines in another's land, whether opened or unopened, may not be held by a deed duly acknowledged and recorded, than why land in its most ordinary signification may not be so held. In other words, mines are land, and subject to the same laws of possession and conveyance."

"There is no more reason for considering the coal an incorporeal hereditament, because it has not been opened, than there is for considering the soil such because it has not been plowed." Green, J., in *Lillibridge* v. *Lackawana Coal Co., supra.*

The language of the respective deeds of Clarkston to Hyndman, and from Hyndman to Clarkston, leaves no room for question that there was an absolute sale and conveyance in fee by Clarkston to Hyndman of all the minerals and timber in and upon the lands described in the said deeds, and by the deed from Hyndman to Clarkston the investment in Clarkston of the surface in fee with the right to take and use the timber for farm purposes. There was a complete severance of the title to the minerals and timber from the title to the surface, and the creation of separate and distinct freeholds. This was done on October 14, 1881, while the purchase by Kelly of the outstanding title from the heirs of Vance, and their conveyance to him of the land did not take place until February 28, 1887.

The Virginia Coal and Iron Company acquired the title of Hyndman to the minerals and timber, and Kelley acquired the title of Clarkston to the surface. They became the owners of estates in fee in distinct and separate parts of the land; as much so as if they had acquired title to separate portions of a certain parcel of land. "The division was as complete as if it had been made by lines on the surface." Their respective estates were the subjects of independent taxation. Code of Va., section 472. They were not the owners of undivided interests *in the same* subject at the time Kelly bought in the Vance title, but were the owners *of distinct* subjects of entirely different natures. They did not own interests or shares in the same freehold, but owned separate freeholds, which were separately the subjects of possession, enjoyment, and incumbrance. Title to the freehold of the one, either in the surface or in the m nerals, could not be acquired by adverse possession of the other. 2 Washburn on Real Prop., 345; *Caldwell* v. *Copeland, supra,* and *Armstrong* v. *Caldwell, supra.* The Virginia Coal and Iron Company *alone* owned the minerals and timber; Kelly *alone* owned the surface. There was no community of interest between them. Hence, it has been held that the owner of the surface of a parcel of land and the owner of the minerals under the same are not joint tenants, nor tenants in common. *Neill* v. *Lacy,* 110 Pa. St. 294; and *Powell* v. *Lantzy* (same court), 34 Atlantic Reporter 450.

In *Powell* v. *Lantzy, supra,* the facts were these: One Flinn, being the owner of a tract of land, conveyed away the same to Jose, but excepted and reserved the coal and minerals, and conveyed them to Powell. Jose afterwards conveyed the surface to Lantzy. Subsequently the land was sold for taxes which had been assessed before the severance of the title to the surface from that to the minerals, and at the sale Lantzy became the purchaser of the whole. An action of ejectment was brought by Powell against Lantzy to re-

cover the coal and minerals.   The regularity of the sale for the taxes was not questioned, but the validity of the title depended, said the court, " upon the question whether Lantzy was forbidden by any rule of legal policy to acquire a title at a sale for taxes charged against his own land, and whether the title acquired, if otherwise good, was affected by any equity growing out of the relation which the owner of the surface and the owner of the minerals bore to each other."   Fell, J., speaking for the court, said: " The owner of mineral rights, holding by virtue of a reservation in a deed, is neither a tenant in common, nor a joint tenant with the owner of the surface.   Each has a separate estate."

The court held in that case that " no relation of confidence existed between them which gave rise to a duty which equity will enforce through the medium of a trust;" and such is our conclusion in the case at bar.

The appellee in his answer averred that the deed from Clarkston to Hyndman for the minerals and timber was a cloud upon his title, which he prayed the court to remove by cancelling and annulling the deed, and to this end he asked that his answer be treated as a cross-bill.   The court so treated it, but refused to grant the relief prayed for.

The jurisdiction of courts of equity to remove clouds from title, where the party complaining has no adequate remedy at law, is well settled.   This is particularly the case where he is the owner of the legal title, and is in possession of the land upon the title to which the cloud rests.   *Otey* v. *Stuart,* 91 Va. 714; *Stearns* v. *Harman,* 80 Va. 48; *Carroll* v. *Brown,* 28 Gratt. 791; *Hale* v. *Penn's heirs,* 25 Gratt. 261; and *Yancey* v. *Hopkins,* 1. Munf. 419.

In this case, the appellee, by virtue of his deed from the heirs of Vance, is the owner of the superior legal title, extending back to the Commonwealth, and is in possession of the land.   The deed from Clarkston to Hyndman, under which the appellant claims, while dependent for validity as

a conveyance of the title on the tax deed to Clarkston which is void on its face, appears to be valid although in reality it is invalid for such purpose. It cannot be denied that it is a cloud upon the title of the appellee, and materially impairs, if it does not destroy, the market value of the land. No one would desire to buy it, or be willing to lend money upon it as a security, with such a cloud resting upon the title. Being prevented by his possession from resorting to the action of ejectment as a remedy, his only relief is in a court of equity. And he is clearly within the rule under which equity interferes. This relief the court below should have granted by compelling the appellant to release or convey to the appellee all right to the minerals and timber which it claims under the deed from Clarkston to Hyndman.

We are, therefore, of opinion that the Circuit Court did not err in dismissing the bill of the plaintiff with costs, but that it did err in refusing to remove the cloud upon the title of the appellee. A proper decree in accordance with this conclusion will be entered by this court.

*Amended and Affirmed.*