# Staunton.

## J. COLES TERRY, SR., AND GRACE TERRY MONCURE v. E. O. TINSLEY.

### September 18, 1924.

1. PRIVATE WAYS—*Reservations of Roadway—Location of Roadway—Roadway must Follow Description in Deed.*—Where a roadway was reserved in a deed and almost completely defined by the deed so far as it ran through complainant's portion of the land conveyed, in locating the roadway on complainant's land the owners of the dominant estate cannot ignore the description contained in the deed, and locate the roadway on another part of complainant's portion of the land.

2. DEEDS—*Restrictive Clause—Exception of Part of Land from Conveyance—Apt Words—"Roadway Reservation."*—The use of apt words in the restrictive clause of a deed is necessary to except a part of the land from the conveyance. The use of the words "roadway" and "roadway reservation" are inapt for that purpose, and signify an intent merely to create an easement. And these words are significant of the intention of the parties not only to limit the use, but also to designate its character, and the intention, if it can be ascertained, is controlling.

3. DEEDS—*Reservations—Exceptions—"Excepted"—"Reserved."*—The presumption which arises upon a conveyance of land followed by words intended to qualify the grant, is that the restrictive words create a reservation, or a new right, rather than an exception from the grant by which the grantor preserves or retains his pre-existing right and title. It has been frequently said that, in such conveyances, the words "reserved" and "excepted" are used interchangeably, or synonymously, and, to determine their effect in the particular case, the surrounding circumstances must be considered.

4. DEEDS—*Reservations—Exceptions—Intention.*—While reservations are construed most strongly against the grantor, this rule is not to be invoked to nullify language which is plain. The recent and correct tendency is to disregard the technical distinctions between "reservations" and "exceptions," and to construe the language employed so as to effectuate the intention of the parties.

5. DEEDS—*Reservations—Private Way.*—From the entire language used in a deed reserving a roadway, it appeared that the grantors did not

reserve a fee simple, but only the right to use a roadway across or upon the land conveyed, and that, in employing the words "roadway" and "roadway reservation" as part of the qualifying language of the grant, the sole use to which the land can be devoted by them is established. Such a limited right to travel over the land of another is not a fee simple but is only an easement.

6. PRIVATE WAYS—*Owner of Fee may Erect Gate.*—Under section 2009 of the Code of 1919 a grantee, as owner of the fee, has a right to maintain gates across a private way which the grantor has reserved.

Appeal from a decree of the Circuit Court of Roanoke county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Jackson & Henson*, for the appellants.

*Horace M. Fox* and *S. Harris Hoge*, for the appellee.

PRENTIS, J., delivered the opinion of the court.

The title to, as well as the proper location and use of, a roadway claimed by the above named appellants (and J. Coles Terry, Jr., who does not unite in this appeal) through the land of E. O. Tinsley, the appellee, is the subject of this controversy.

The question is raised by a bill filed by Tinsley, and the decree is in his favor. It must be determined by the true construction of two conveyances.

In 1914, J. Coles Terry, Sr., and his two children, J. Coles Terry, Jr., and Grace Terry (now Mrs. Moncure), were the owners of 349.2 acres of land, the southern boundary of which was the centre of the Roanoke and Floyd turnpike. They wished to sell, and John C. Coles desired part of it, but being unable to pay for it, he agreed with S. H. Willett and Tinsley that he

would take the deed, that cotemporaneously they would divide it as agreed upon, and that each would pay for his portion. Under this agreement Tinsley was to have fifty-four and one-half acres, that portion which fronted on the turnpike. In accordance with this understanding, J. Coles Terry, Sr., representing himself and the other two grantors, met John C. Coles and Tinsley at an attorney's office on March 20, 1914, and the two deeds here to be construed were prepared, the one from the Terrys, dated March 19th, conveying the entire tract to Coles, and the other from Coles, dated March 20th, conveying the fifty-four and one-half acres, part thereof, to Tinsley. Both deeds were acknowledged for record on the same day, March 20th. A letter from J. Coles Terry, Sr., dated March 21, 1914, shows that he knew that Tinsley was to contribute part of the cash consideration, and suggested that it be paid by Tinsley directly to him in satisfaction of Coles' obligation. The deed from the Terrys to Coles conveys the entire tract by metes and bounds and contains these clauses referring to the roadway in dispute:

"It is distinctly understood and agreed between the parties hereto that there is reserved from this conveyance a strip of land twenty (20) feet in width leading from a point on the Roanoke and Floyd turnpike, where the old original road intersects said pike, following the old road leading from said pike to George Page's gate, running from thence on the north side of the fence and on the north side of George Page's house through the pine land and timber land to J. Coles Terry, Jr., line. The grantors or their assigns in using and locating said roadway shall have the right to make convenient location, but such location shall be confined to the pine and timber land."

"It is further distinctly understood and agreed between the parties hereto that the grantee herein named shall have the right to use in common with the grantors the roadway first hereinabove reserved leading from Roanoke and Floyd Turnpike to J. Coles Terry, Jr., line, but this right of user or easement to the said grantee shall be strictly a personal privilege, and he shall have no right to transfer or assign said right of user or easement."

Then in the deed cotemporaneously acknowledged from Coles to Tinsley is this clause:

"It is distinctly understood and agreed between the parties hereto · that this conveyance is made by the grantors to the grantee subject to a roadway reservation twenty (20) feet wide, leading from a point on the Roanoke and Floyd turnpike where the old original road intersects said pike, following the old road leading from said pike to George Page's gate, running from thence on the north side of the fence on north side of George Page's house through the pine and timber land to J. Coles Terry, Jr., line, which reservation is set out in detail in a certain deed from J. Coles Terry, Sr., and others, to the said J. C. Coles, bearing date of the 19th day of March, 1914, and to which deed reference is hereby made for a more detailed and accurate statement of said roadway reservations."

For about seven years thereafter no misunderstanding arose, and there was no effort to locate the roadway so far as not already located by the express language used. In 1921 or 1922, Mrs. Moncure built a summer house on land north of the Tinsley land, and claimed the right to locate a twenty foot roadway, starting at the George Page gate, across Tinsley's land to the northeast corner thereof. She also claimed a fee simple in the land so included in the roadway, and denied

Tinsley's right to erect gates across it. This suit resulted.

[1] 1. First as to the location of the roadway. In construing the clauses involved it is necessary to remember that while the roadway referred to in the Coles deed related to the entire 349 acre tract, the new roadway now claimed is almost entirely located on the fifty-four and one-half acre tract of Tinsley, thus relieving the residue of the tract from the burden. If this right exists it can only be because the language of the deeds compels such a construction. Referring to the language used, it conclusively repels such a construction. In the Terry to Coles deed much of the roadway is clearly located by the words of the reservation—that is, it is located to a point north of Page's house, for after reaching Page's gate, it runs thence on the north "side of the fence and on the north side of Page's house," and then "through the pine and timber land to J. Coles Terry, Jr., line * * but such location shall be confined to the pine and timber land." Reference to the plat shows that in locating the roadway of which Tinsley complains, the appellants ignore this description and instead of going from Page's gate almost due north to the north side of Page's house, they disregarded and diverged from the northward course so plainly indicated, and sought to divert it immediately at the gate and in a northeastwardly direction across Tinsley's land. It is perfectly evident that in so doing they exceeded their rights. The option to locate the roadway only existed as to that portion of it which was not located by the deed—that is, its further extension after it passed the gate and reached to the north side of the Page house, which is almost due north of the gate. At the time the deeds were executed there was a roadway then in use which had a north-

ward course from the gate and past the house, but beyond that point through the timber land it was not well defined. It was only across the land, after it had passed the Page house and reached the point north of it so plainly expressed in the conveyance, that it was to be so extended over the pine and timber land to the land of J. Coles Terry, Jr. Thus the roadway is reserved and almost completely defined by the deed so far as it runs through Tinsley's portion of the land, for when it reaches the point north of the Page house it is very near the northern boundary of Tinsley's land. It is from this point only then that it can be further defined and extended. The decree of the trial court as to this is plainly right.

[2] 2. The question raised as to the title to the roadway is not so easily solved. The use of apt words in the restrictive clause is necessary to except a part of the land from the conveyance. The use of the words "roadway" and "roadway reservation" are inapt for that purpose, and signify an intent merely to create an easement. In resolving this question, the repeated use of the words "roadway" and "roadway reservation" in the clauses under review is, we think, significant of the intention of the parties not merely to limit the use, but also to designate its character, and in all such controversies the intention, if it can be ascertained, is controlling.

This conduct of the parties is also illuminating: After Tinsley bought, he built a fence across the north side of his property, separating it from the Coles land, and both he and Coles continued to use the old road so far as it ran through Tinsley's land for seven years. He also maintained gates across it where it entered his land, to which no objection was made until this controversy arose.

[3] The presumption which arises upon a conveyance of land followed by words intended to qualify the grant, is that the restrictive words create a reservation, or a new right, rather than an exception from the grant by which the grantor preserves or retains his pre-existing right and title. It has been frequently said that in such conveyances the words "reserved" and "excepted" are used interchangeably, or synonymously, and to determine their effect in the particular case the surrounding circumstances must be considered.

[4] Another rule, which however is not to be invoked to nullify language which is plain, is that such reservations are construed most strongly against the grantor. The recent and correct tendency is to disregard the technical distinctions between "reservations" and "exceptions," and to construe the language employed so as to effectuate the intention of the parties. These and similar expressions are helpful in construing obscure contracts of this character, and are well sustained by authority. *Bradley* v. *Va. R. & P. Co.*, 118 Va. 233, 87 S. E. 74; *Gordon* v. *Kingan*, 132 Va. 229, 111 S. E. 99; 9 R. C. L. 752; 2 Devlin on R. E., sec. 980.

[5] Applying these rules to these deeds, we conclude from the entire language used that the grantors did not reserve a fee simple but only the right to use a roadway across or upon the land conveyed, and that in employing the words "roadway" and "roadway reservation" as part of the qualifying language of the grant, the sole use to which the land can be devoted by them is established. Such a limited right to travel over the land of another is not a fee simple but is only an easement. The substantive right of the appellants as to the roadway is the right to travel over it. That this is the only right intended to be reserved by the grantors is, we think, manifest, because the alternative is to hold that

they excepted the fee simple, and this holding would be inconsistent with and destroy the substantive right of the grantee.   That construction which effectuates the intention and preserves the substantive rights of both is to be preferred.   When these rights can be fairly determined, no inapt, ill chosen and inconsistent words should defeat them.

[6] As the owner of the fee, the appellee, Tinsley, has the right to maintain gates.   Code section 2009.

*Affirmed.*