## Richmond

WANDA AUSTIN, AN INFANT, TIMOTHY AUSTIN, AN INFANT,
FREDERICK AUSTIN, JANIE HAYDEN, LOUVENIA
STEWART, WILLIAM AUSTIN AND ELLA M. AUSTIN

v.

WALTER DOBBINS AND MAMIE ESTELLE DILLON

March 2, 1979.

Record No. 770875.

Present: All the Justices.

C. *Barry Anderson (John M. Goldsmith; Goldsmith & Anderson,* on brief), for appellants.

No brief or argument for appellees.

POFF, J., delivered the opinion of the Court.

This appeal challenges the validity of a judicial sale partitioning real estate, the allotment of the shares, and the fees awarded the judicial officers.

William Robinson (Robinson), son of Walter and Ada Robinson, died intestate June 3, 1973, holding interests in several parcels of land in Montgomery County. His heirs at law were the children and grandchildren of three deceased sisters who had also died intestate. Pertinent genealogical data appear on the chart introduced in evidence and reproduced at the foot of this opinion. Robinson's nephew, William Austin, and Robinson's nieces, Janie Austin Hayden, Louvenia Austin Stewart, and Kathleen Stewart (collectively, the complainants), filed suit to partition the land. Named as respondents were Walter Dobbins and Mamie Estelle Dillon (Robinson's nephew and niece), Frederick Austin, Wanda Austin, and Timothy Austin, all infants (children of Robinson's deceased nephew, George Austin), and Ella M. Austin (George Austin's widow). During the pendency of the suit Frederick Austin attained his majority, and the undivided interest of complainant Kathleen Stewart was acquired by mesne conveyances by respondent Walter Dobbins and Jimmy Walter Dobbins. Jimmy has never been joined as a party to the suit.

On October 21, 1976, the commissioner in chancery, William O. Smith, reported that the realty should be surveyed; that it could not be partitioned in kind; that a partition by sale would be in the interest of all parties; that the property as an entirety had been valued by two appraisers at $90,500 and $91,000; that the sale value could be increased to $100,000 if existing parcel lines were rearranged; that respondent Walter Dobbins, one of Robinson's heirs, had offered $90,000 for the property; and that Dobbins' offer was fair and equitable and should be accepted.

The *guardian ad litem* appointed to represent the infant respondents filed exceptions to the commissioner's report. Alleging that adjacent landowners were interested in buying portions of the tract and that the land was undervalued by $30,000, he offered an

"alternative proposal for sale" by parcels. Later, on December 10, he filed with the commissioner an offer by Ralph Martin and Marvin Carden to buy the entire tract for $101,500. On December 16, Walter and Jimmy Dobbins offered $105,000.

Following a hearing on December 20, the chancellor wrote a memorandum opinion dated December 29 ruling, *inter alia*, that "the $105,000 offer is accepted." This opinion was never circulated among counsel. By letter dated December 30 addressed to the chancellor, Marvin Carden offered $108,000 for the property. This letter was marked by the chancellor, "Received after other offer accepted. File. WSJ". On February 28, 1977, the chancellor entered a "Decree of Sale" appointing three special commissioners and directing them to execute a deed to the Dobbinses and to collect and distribute the proceeds of sale.

All complainants except Kathleen Stewart joined respondents Ella M. Austin and her three children (the two infants acting by *guardian ad litem*) in perfecting this appeal. The appellees, Walter Dobbins and Mamie Estelle Dillon, made no appearance on appeal.

■ We believe the record supports the chancellor's conclusion that the subject property is not susceptible of partition in kind and that the best interests of the coparceners will be promoted by a sale and distribution of the proceeds. We are of opinion, however, that the proceedings conducted below failed to promote those interests and that the "Decree of Sale" must be reversed.

■ We find nothing irregular in the fact that the purchaser Dobbins is a co-owner of the property to be partitioned. Indeed, Code § 8-692 (now § 8.01-83) expressly authorizes partition by allotment of the whole property to one or more coparceners, *Johnson* v. *Merritt*, 125 Va. 162, 99 S.E. 785 (1919), or to a tenant in common, *Price* v. *Simpson*, 182 Va. 530, 29 S.E.2d 394 (1944). But such partition is a partition by sale and must be conducted in compliance with all relevant statutory provisions, *see, e.g.*, Code §§ 8-655, *et seq.* (now §§ 8.01-67, *et seq.*,) and in accordance with the long-established rules and standards governing judicial sales.

> The sale of property in judicial proceedings must be made so as to bring the best price obtainable, and to attain that purpose the sale should be conducted so as to encourage fair, open and competitive bidding.

*Federal Land Bank* v. *Parks,* 170 Va. 240, 242, 196 S.E. 627, 628 (1938).

 To attain that purpose in that manner, the court must decide whether the sale should be by public auction or private bid. *Conrad* v. *Fuller,* 98 Va. 16, 34 S.E. 893 (1900). "Its conclusion is, of course, subject to review upon appeal." *Stamps* v. *Williamson,* 190 Va. 145, 153, 56 S.E.2d 71, 74 (1949). The same is true of the court's decision "whether it would be more advantageous to sell [the property] altogether or in parcels, and if in parcels, what number there should be, how they should be laid off and in what order sold". *Long, & al.* v. *Weller's ex'or & als.,* 70 Va. (29 Gratt.) 347, 358 (1877).

 Even when the property is auctioned under court decree, the acceptance of the highest bid does not create a *judicial* sale. A judicial sale is not consummated until the proceeding is confirmed by the court. Until then, the proceeding is *in fieri,* the accepted bidder is merely a preferred proposer, and the court retains the power to set the proceeding aside and order a new sale. *Terry* v. *Coles' Ex'or and als.,* 80 Va. 695 (1885). The patent purpose of this rule is to afford interested parties an opportunity to show that judicial sale standards have not been satisfied.

The rules and standards governing the conduct of judicial sales are, of course, of special import when, as here, the interests of infant owners are involved. *Watkins* v. *Ford,* 123 Va. 268, 96 S.E. 193 (1918).

The proceedings conducted below did not comply with these rules and standards. From the beginning, it was clear there was an eager market for the property. The commissioner reported a bid at the appraised value. The *guardian ad litem* represented that adjacent property owners were interested buyers and conveyed a bid $11,500 higher than the original bid. Promptly, the original bidder raised his first bid by $15,000. The commissioner found that a sale by parcels would yield more than a sale in gross. The *guardian ad litem* agreed, proposed an alternative plan of sale, and expressed the view that the property was worth $30,000 more than the appraisal.

Notwithstanding the continuing competition between two active bidders, the expressed interest of other potential buyers, and the possibility that a sale by parcels would yield a greater return, the chancellor wrote a memorandum opinion accepting the latest bid in gross.

This opinion, written less than two weeks after that bid was tendered, was never circulated among counsel, and two months later the "Decree of Sale" was entered. In the meantime, the chancellor had received a letter tendering a higher bid. From the chancellor's note at the foot of that letter, it would appear he felt that acceptance of the previous bid had consummated a judicial sale and that he had no power to consider new bids or to order a new sale by an alternative method. As *Terry* teaches, the chancellor erred, and the sale will be set aside. Upon remand, the chancellor will determine whether, in light of the principles we have stated, the property should be sold as a whole or by parcels and whether by private or public sale.

By deed dated April 2, 1951, Robinson's mother, Ada Robinson, conveyed Robinson life estates in a five-acre residence parcel and in the acreage remaining in four other parcels of land.[1] The deed further provided that the grantor's "grandson Bill Austin shall have the right to live in the residence for and during his natural life on the five acre tract of land." In his memorandum opinion, the chancellor ruled that he had "inspected the original deed of conveyance and was of the opinion that the handwritten portion attempting to convey a life estate to Mr. Austin did not, in fact, convey any estate to him". This ruling, reaffirmed in the "Decree of Sale", is challenged on appeal.

The chancellor assigned no reason for his ruling, and the original deed is not contained in the record before us. From a clerk's copy of the deed appended to the *guardian ad litem's* exceptions, however, it appears that the clause in question was duly acknowledged by the grantor's mark and that her mark was properly witnessed by the same person who witnessed her mark at the foot of the deed. We find no irregularity in the method of execution, there is no suggestion of fraud, and there is no ambiguity in the language employed. "The grantor's intention, as expressed in the deed, must prevail unless in conflict with some principle of law or rule of property." *Fitzgerald* v. *Fitzgerald*, 194 Va. 925, 929, 76 S.E.2d 204, 207 (1953).

We agree with the chancellor's ruling that the deed did not convey an "estate" to William Austin; but, giving effect to the plain import of the grantor's language, we hold that the deed created a

---

[1] Inasmuch as the grantor died intestate and all her heirs were parties to this suit, these parcels were included as part of the property sought to be partitioned.

servitude upon the five-acre residence tract and vested in William Austin an affirmative easement in gross to live in the residence for life. *See Coal Corporation* v. *Lester*, 203 Va. 93, 97, 122 S.E.2d 901, 904-05 (1961). *See generally*, V Restatement of Property, *Servitudes* ch. 38 (1944); 1 Minor on Real Property §§ 86-89 (2d.ed. F. Ribble 1928). The chancellor's ruling must be modified accordingly.[2]

■ The Ada Robinson deed further provided:

> Upon the death of . . . [Robinson], then the said land is to pass equally, share and share alike, for and during the natural lives of . . . [India James Nash Hubbard and Ada Austin], and upon their demise, or either of them, or both of them, then the same is to pass to their children and grandchildren, share and share alike; and it is the wish and desire of the . . . [grantor] that the real estate . . . shall not be sold or conveyed away for the lives now in existance (sic), and until the expiration of twenty-one years thereafter.

The commissioner determined that this provision "violates the rule against perpetuities and therefore is void returning the property to . . . [the grantor's] estate and thereby dictating the 1/4th percentage for distribution purposes." The "Decree of Sale" affirmed "the degree of ownership as stated" in the commissioner's report, and appellants assign error to that holding.

> The rule against perpetuities in Virginia voids a contingent remainder or executory interest, created *inter vivos* or by will, which may, by some possibility, however unlikely that possibility may be, vest beyond a life or lives in being at the effective date of the instrument creating the interest, plus 21 years and 10 months. (Citations omitted.)

---

[2]Counsel for appellants acknowledged at bar that William Austin's interest is adverse to the interests of the other heirs of Ada Robinson and that, upon remand, it will be necessary for separate counsel to represent the separate interests.

*Hagemann* v. *National Bank*, 218 Va. 333, 337, 237 S.E.2d 388, 391 (1977).

■ Construing the deed as of its effective date, *i.e.*, the date of its delivery, we find no violation of the rule against perpetuities. Subject to William Austin's affirmative easement in the residence, the deed creates successive life estates in Robinson and his two sisters, with remainders in fee to the sisters' children and grandchildren. The children and grandchildren are to "share and share alike" and constitute a single class rather than two successive classes. *See Blackburn* v. *Hedgbeth*, 199 Va. 767, 102 S.E.2d 329 (1958); *Driskill* v. *Carwile*, 145 Va. 116, 133 S.E. 773 (1926); *Senger and als.* v. *Senger's Ex'or and als.*, 81 Va. 687 (1886). The class opens at the effective date of the deed; it closes upon the death of the last surviving life tenant, and any grandchild thereafter conceived and born will not be a member of the class.

> Where a gift to a class is postponed, so far as distribution is concerned, until the termination of a prior life estate, it is clear that the general rule of construction would permit the class to increase until the end of the life estate, but would exclude all members of the class who were not in being at the termination of the life estate. . . . Such an application gives effect to the probable desire of the transferor to include as many members as possible and to the principle of convenience in closing the class when the time has come for distribution.
>
> . . . .
>
> The postponement may involve two preceding life estates, as in the case where property is left in trust for the benefit of A for life, then to B for life, with remainder to the children of C. In such case, the class may continue to increase during the continuation of both life estates.

Simes and Smith, *The Law of Future Interests* § 640 (2d. ed. 1956).

Thus, the deed provides that the interests of the remaindermen will vest no later than the death of the last surviving life tenant, a

life in being "at the effective date of the instrument creating the interest[s]".[3] *Hagemann* v. *National Bank*, 218 Va. at 337, 237 S.E.2d at 391. We hold that the remainder interests are valid and that the chancellor erred in his ruling.

William O. Smith was awarded a fee of $4,800 for his services as commissioner in chancery. The chancellor appointed Ray W. Grubbs and Michael Quinn special commissioners to draw and execute a deed to the Dobbinses and to collect the purchase price. Smith was appointed special commissioner to receive and distribute the funds. For these several services, Grubbs and Quinn were awarded jointly a fee of $3,600 and Smith a fee of $500. Code § 8-669 (now § 8.01-109) fixes the commission for "the services of commissioners or officers under any decree or order for a sale, including the collection and paying over of the proceeds". Under the statutory formula of "five per centum on amounts up to and including fifty thousand dollars, and two per centum on all above that", the commission on a $105,000 judicial sale is $3,600. The statute further provides that, when more than one commissioner serves, "the court . . . shall apportion the commission between them as may be just."

We hold that there was no statutory authority for the $500 fee awarded Smith. Upon remand, fees will be awarded special commissioners according to the statutory mandate.

Appellants contend that the $2,000 fee awarded the *guardian ad litem* should be paid from the proceeds of sale rather than "from the infants' share[s]" as directed by the chancellor. We agree.

As appears from the memorandum opinion, the reason underpinning the amount of this award was the chancellor's finding "that the Guardian ad Litem had increased the offer by at least $15,000 through his efforts". While Code § 8-88 (now § 8.01-9) provides, generally, that when the *guardian ad litem* "has rendered substantial service" to the estate of an infant the fee is "to be paid out of the estate of such [infant]", we have recognized that in the presence of "peculiar facts, such as the creation of a fund which enures to the common benefit of all concerned", courts may properly assess the fee against the common fund. *Patterson* v. *Trust Co.*, 156 Va. 763, 775, 159 S.E. 168, 172 (1931). We believe equity requires such an assessment in this cause, and the chancel-

---

[3]The precatory language in the granting clause which attempts to restrain alienation of the land is not germane to the question whether the vesting of the remainder interests offends the rule against perpetuities.

lor's ruling on this question will be reversed.

The decree of sale will be reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*

GENEALOGY OF ADA AND WALTER ROBINSON'S DESCENDANTS

ADA AND WALTER ROBINSON

WILLIAM (WILL) ROBINSON

INDIA JAMES NASH HUBBARD* unmarried at her death

STELLA HUBBARD*

KATHLEEN STEWART (sold her interest to Walter Dobbins)

ADA AUSTIN* married FRED AUSTIN

JANIE HAYDEN

WILLIAM (BILL) AUSTIN

LOUVENIA STEWART

FREDERICK AUSTIN, now an adult

GEORGE AUSTIN*, married Ella Mae Cook

WANDA AUSTIN, an infant

TIMOTHY AUSTIN, an infant

ESSIE HALE HAYDEN DOBBINS* three husbands***

WALTER DOBBINS

MAMIE ESTELLE DILLON

*Deceased at time of Will Robinson's death

Genealogical chart filed June 28, 1977, revised December 16, 1977, based on information in Commissioner's depositions of October 4, 1975.