Present: Carrico, C.J., Compton,[1] Lacy, Hassell, Keenan,
Koontz, and Kinser, JJ.

KATHERINE FITZGERALD SHIRLEY

v. Record No. 990611   OPINION BY JUSTICE CYNTHIA D. KINSER
                                    March 3, 2000
KATHERINE GRAY SHIRLEY, ET AL.

              FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                    Paul M. Peatross, Jr., Judge


     In this appeal, we address the common law rule that,

in a deed, a reservation or exception in favor of a

stranger to the instrument does not create in the stranger

any right or interest in the property being conveyed.  The

circuit court relied on this rule to sustain demurrers to a

bill of complaint seeking a declaratory judgment that a

reservation in favor of a stranger to a deed created a life

estate for the benefit of the stranger.  Since this rule is

applicable in the Commonwealth pursuant to Code § 1-10, and

because we conclude that any modification of the rule falls

within the province of the General Assembly, we will affirm

the circuit court's judgment.

                      FACTS AND PROCEEDINGS

_____
     [1] Justice Compton participated in the hearing and
decision of this case prior to the effective date of his
retirement on February 2, 2000.

Katherine Gray Shirley (Mrs. Shirley) conveyed a certain tract of real property near Greenwood (the Greenwood property) in Albemarle County to her daughters, Martha Gray Shirley Bates and Katherine Fitzgerald Shirley (Katherine), in their capacities as "Trustees of 'The Fairview Trust.'" That deed, dated May 15, 1990, contained the following provision that is the subject of this appeal: "The party of the first part [Mrs. Shirley] reserves unto herself a life estate for herself and a life estate for the benefit of Katherine Fitzgerald Shirley, in and to said real property."

Several years later, Bates, in her capacity as "Trustee of 'The Fairview Trust,'" conveyed her interest in the Greenwood Property to Mrs. Shirley, in her capacity as "Trustee of The Katherine Gray Shirley Trust."[2] Subsequently, on May 28, 1998, Mrs. Shirley and Bates, individually and in their capacities as trustee and successor trustee, respectively, of "the Katherine Gray Shirley Trust," conveyed their interests in the subject

_____

[2] At the end of that deed, Mrs. Shirley signed a statement in which she certified that "it was not her intent to create a life estate in Katherine Fitzgerald Shirley in said deed dated May 15, 1990, but solely to permit Katherine [Fitzgerald] Shirley to reside with the undersigned [Mrs. Shirley] during the life estate reserved unto herself [Mrs. Shirley]."

property to Mrs. Shirley, individually.  On the same day, Mrs. Shirley executed a deed of trust on the property to secure payment of a note signed by her.  Mary-Susan Payne was the trustee named in the deed of trust, and Western Financial Bank (Western) was the beneficiary.

In July 1998, Katherine filed a bill of complaint against Mrs. Shirley, Western, and Payne in the circuit court, seeking a declaratory judgment that Katherine has a life estate in the property, superior to the lien of Western's deed of trust.  All three defendants filed demurrers to the bill of complaint.  In a memorandum in support of her demurrer, Mrs. Shirley asserted that Katherine was not a party to the May 15, 1990 deed, and that there were "no words of [g]rant" to Katherine in that deed.  Western and Payne contended there was no actual controversy between them and Katherine, and that therefore a declaratory judgment action was improper.

After considering the parties' memoranda and hearing argument ore tenus, the chancellor entered an order sustaining the defendants' demurrers and dismissing the bill of complaint.  In a letter opinion, the chancellor first concluded that Katherine properly brought an action

_____

3

for declaratory judgment.  The chancellor then examined the common law rule that "in a deed neither [a] reservation nor an exception in favor of a stranger to the instrument can, by force of ordinary words of exception or reservation, create in the stranger any title, right, or interest in or respecting the land conveyed."  Although Katherine admitted that Virginia incorporates the common law of England pursuant to Code § 1-10,[3] she urged the chancellor to modify or abrogate this common law rule.  However, the chancellor declined to do so, holding that modification of the common law rule against reservations in favor of a stranger to a deed lies within the province of the General Assembly, not the judiciary.  We awarded Katherine this appeal.

ANALYSIS

On appeal, Katherine acknowledges that, under the common law, a grantor could not reserve an interest in real property for the benefit of a stranger to the deed.  Nor does she dispute that the common law of England has been adopted in Virginia pursuant to Code § 1-10.  However, she asks this Court to abrogate or modify this common law rule

_____
[3] Code § 1-10 provides that "[t]he common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same,

4

for three reasons.  Katherine first asserts that the rule is at odds with the modern trend in property law to give effect to a grantor's intent, and that, in this case, the rule frustrates Mrs. Shirley's intent to grant Katherine a life estate in the subject property.  Next, Katherine contends that numerous courts in other jurisdictions have rejected the rule and thus urges this Court to do so.  Finally, she posits that the common law rule is inconsistent with the General Assembly's intent reflected in Code § 55-22 to protect third-party beneficiaries of written instruments.

As Katherine asserts, this Court has repeatedly held that a deed should be construed to give effect to the grantor's intent.  Auerbach v. County of Hanover, 252 Va. 410, 414, 478 S.E.2d 100, 102 (1996); Allen v. Green, 229 Va. 588, 593, 331 S.E.2d 472, 475 (1985); Austin v. Dobbins, 219 Va. 930, 936, 252 S.E.2d 588, 592 (1979); Fitzgerald v. Fitzgerald, 194 Va. 925, 929, 76 S.E.2d 204, 207 (1953); Albert v. Holt, 137 Va. 5, 9, 119 S.E. 120, 122 (1923).  However, the grantor's intention cannot prevail if it is "in conflict with some principle of law or rule of property."  Fitzgerald, 194 Va. at 929, 76 S.E.2d at 207;

_____

and be the rule of decision, except as altered by the

5

accord <u>Auerbach</u>, 252 Va. at 414, 478 S.E.2d at 102; <u>Albert</u>, 137 Va. at 9, 119 S.E. at 122.

The common law rule of property at issue in this appeal provides that "a reservation, to be good, must be made to all, some, or one of the grantors, and not to a stranger to the deed." <u>Wickham v. Hawker</u>, 151 Eng. Rep. 679, 683 (1840).[4] A reservation is "[t]he creation of a new right or interest . . . by and for the grantor, in real property being granted to another." Black's Law Dictionary 1309 (7th ed. 1999).[5] At common law, words of "reservation" were not deemed to be words of "grant." <u>Nelson v. Parker</u>, 687 N.E.2d 187, 188 (Ind. 1997); <u>cf.</u> <u>Lim v. Choi</u>, 256 Va.

_____

General Assembly."

[4] This common law rule is sometimes referred to as the "stranger rule." 9 <u>Thompson on Real Property</u> § 82.09(c)(2) (David A. Thomas ed., 2d Thomas ed. 1999).

Pursuant to a statute enacted in 1925, England changed the "stranger rule." Now, "a reservation of a legal estate" vests the interest being conveyed in the person designated whether that person is the grantor or not. <u>Halsbury's Laws of England</u> ¶ 1531 (Current Serv. Binder 2, Additional Materials/Deeds at p. 134 (1999)) (citing Law of Property Act, 1925, 15 & 16 Geo. 5, ch. 20, §§ 65(1), (3) (Eng.)).

[5] In contrast to a "reservation," an "exception" excludes or withdraws a pre-existing right from the property conveyed that would otherwise pass to the grantee. <u>Terry v. Tinsley</u>, 140 Va. 240, 246, 124 S.E. 290, 292 (1924). Frequently, the words "reserved" and "excepted" are used interchangeably. <u>Id.</u>

167, 171-72, 501 S.E.2d 141, 143-44 (1998) (discussing necessity for words of grant or conveyance in deed).  Thus, a grantor's words of reservation could create a property interest in favor of the grantor but not in favor of a third person, or "stranger," to the deed.

Assuming, without deciding, that Mrs. Shirley intended to convey a life estate in the subject property to Katherine in the 1990 deed, Mrs. Shirley's method of conveyance conflicts with the common law rule and thus cannot prevail.  See Fitzgerald, 194 Va. at 929, 76 S.E.2d at 207.  Katherine was a "stranger" to the 1990 deed. Therefore, Mrs. Shirley's words of reservation did not convey an interest in the property to Katherine.

As the parties acknowledge, this Court has not previously addressed the "stranger rule" and its applicability in Virginia.[6]  However, pursuant to Code § 1-

_____
[6] To the extent that Katherine relies on this Court's decision in McGrue v. Brownfield, 202 Va. 418, 117 S.E.2d 701 (1961), to suggest that we have previously considered and/or abrogated this common law rule, such reliance is misplaced.  Although the property interest at issue in that case was a life estate reserved by a grantor for herself and her son, the questions presented on appeal concerned only the mental capacity of the grantor and whether adequate consideration was given for the conveyance.  The validity of the reservation was not challenged.

Similarly, in Austin, 219 Va. at 936, 252 S.E.2d at 591-92, the grantor conveyed a life estate in real property

7

10, we conclude that the rule continues "in full force" in this Commonwealth and is "the rule of decision." Code § 1-10. It is not "repugnant to the principles of the Bill of Rights and the Constitution," and has not been "altered by the General Assembly." Id.

We have, however, recognized that while Code § 1-10, "aside from its express limitations, appears to adopt English common law 'generally, and without a qualification,' this is not in fact the case." Weishaupt v. Commonwealth, 227 Va. 389, 399, 315 S.E.2d 847, 852 (1984) (quoting Foster v. Commonwealth, 96 Va. 306, 309, 31 S.E. 503, 504 (1898)). Accordingly, we stated the following principle with regard to the adoption of the English common law in this Commonwealth:

> Such of [English common law] doctrines and principles as are repugnant to the nature and character of our political system, or which the different and varied circumstances of our country render inapplicable to

_____

to her son and, in the same deed, provided that her grandson "shall have the right to live in the residence" during his life. Again, the "stranger rule" was not an issue on appeal.

However, in Lee v. Bumgardner, 86 Va. 315, 10 S.E. 3 (1889), the common law rule at issue today was implicated. In that case, this Court held that when a deed reserved the right to raise ore to the owners of a certain furnace, not parties to the deed, the right to raise the ore remained in the grantor until the grantor subsequently conveyed the right to the owners of the furnace by a separate instrument.

8

us, are either not in force here, or must be so modified in their application as to adapt them to our condition.

Foster, 96 Va. at 310, 31 S.E. at 505.

Using this principle, this Court has abrogated or modified English common law in only a few instances. E.g., Weishaupt, 227 Va. at 404, 315 S.E.2d at 855 (abolishing husband's immunity from prosecution for rape of wife that occurred when husband and wife were separated but not yet divorced); Surratt, Adm'r v. Thompson, 212 Va. 191, 193-94, 183 S.E.2d 200, 202 (1971) (abolishing interspousal immunity in automobile torts); Smith v. Kauffman, Adm'r, 212 Va. 181, 186, 183 S.E.2d 190, 194 (1971) (abolishing parental immunity in automobile accident cases); Midkiff v. Midkiff, 201 Va. 829, 833, 113 S.E.2d 875, 878 (1960) (abolishing immunity in automobile accident case between two unemancipated brothers). Unlike the situations addressed in those cases in which we recognized changes in familial relationships, we find nothing in the nature, character, and circumstances of either our political system or country that vitiates the underlying reason for the common law "stranger rule." Instead, modification or abrogation of that rule by this Court would adversely impact the public policy favoring certainty of title to real property.

Therefore, "we will apply the law as it now exists, because we believe that a decision whether to abrogate such a fundamental rule as the one under consideration is the function of the legislative, not judicial, branch of government." Williamson v. The Old Brogue, Inc., 232 Va. 350, 354, 350 S.E.2d 621, 624 (1986).[7] This is particularly so when, as here, any change in the common law rule would affect not only inchoate but also vested property rights. If, at times, application of the common law rule at issue frustrates a grantor's intent, as Katherine argues it does in this case, such frustration could be alleviated if the grantor directly conveys the desired property interest to the third party before conveying the fee, subject to the already existing interest in the third party. Alternatively, the grantor could reserve the interest to

_____

[7] Other jurisdictions likewise adhere to the common law rule at issue in this appeal. E.g., Estate of Thomson v. Wade, 509 N.E.2d 309, 310 (N.Y. 1987); In re Condemnation by County of Allegeny of Certain Coal, Oil, Gas, Limestone and Mineral Properties, 719 A.2d 1, 3 (Pa. Commw. Ct. 1998); Tallarico v. Brett, 400 A.2d 959, 964 (Vt. 1979); Pitman v. Sweeney, 661 P.2d 153, 154 (Wash. Ct. App. 1983); Jolynne Corp. v. Michels, 446 S.E.2d 494, 502 (W. Va. 1994); but see Auzmus v. Nelson, 743 P.2d 377, 380 (Alaska 1987); Willard v. First Church of Christ, Scientist, Pacifica, 498 P.2d 987, 991 (Cal. 1972); Nelson v. Parker, 687 N.E.2d at 190; Townsend v. Cable, 378 S.W.2d 806, 808 (Ky. 1964).

the grantor, and then convey the reserved interest to the third party.  See Nelson v. Parker, 687 N.E.2d at 189.[8]

For these reasons, we will affirm the judgment of the circuit court.[9]

Affirmed.

---

[8] Mrs. Shirley could also have named Katherine as a grantee in the 1990 deed and used words of grant to convey a life estate to Katherine.  Obviously, in that situation, Katherine would not have been a "stranger" to the deed.

[9] We will not address Katherine's argument with regard to Code § 55-22 because she did not present that argument before the chancellor.  See Rule 5:25; Morgen Indus., Inc. v. Vaughan, 252 Va. 60, 67-68, 471 S.E.2d 489, 493-94 (1996).