COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Friedman, Chaney and Raphael
Argued by videoconference

CATOCTIN RIDGE HOMEOWNERS
 ASSOCIATION, INC.

v.      Record No. 0981-24-4

GEORGE L. BILLER

OPINION BY
JUDGE STUART A. RAPHAEL
MARCH 25, 2025

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James P. Fisher, Judge

Stephen C. Price (Theresa D. Small; McCandlish & Lillard P.C., on
briefs), for appellant.

Jacqueline A. Kramer (Westlake Legal Group, PLLC, on brief), for
appellee.

Virginia continues to follow the common-law "stranger" rule, sometimes called the "stranger to the deed" rule. *Shirley v. Shirley*, 259 Va. 513, 516-18 (2000). The stranger rule provides "that, in a deed, a reservation or exception in favor of a stranger to the instrument does not create in the stranger any right or interest in the property being conveyed." *Id.* at 515. The stranger rule applies only to reservations and exceptions, not to express grants. *See id.* at 520 n.8.

Appellant Catoctin Ridge Homeowners Association, Inc. argues that the trial court defied the stranger rule when it found that a 1995 deed conveyed an express easement to an adjoining lot then-owned by appellee's mother, who was not a party to the deed. But the 1995 deed is best construed as granting an express easement, not reserving or excepting one. Accordingly, we affirm the trial court's holding that the stranger rule does not apply and that the 1995 deed granted an express easement that entitles appellee to access his property.

On December 5, 1995, developer Catoctin Ridge Limited Partnership executed a "deed of subdivision, easement, vacation, conveyance and release" to subdivide its land into lots and parcels for the creation of a residential neighborhood. The deed included a plat that showed the lot layout. The other parties to the deed were two trustees under a deed of trust, appellant Catoctin Ridge, and the Board of Supervisors of Loudoun County. The deed conveyed to the Board of Supervisors a 100-year floodplain easement and an easement for ingress and egress for the construction and maintenance of utilities and the performance of other governmental functions.

South of the subdivision property are four lots, including Lot 8, owned in 1995 by Charlotte H. Biller ("Charlotte"), the mother of appellee George L. Biller ("Biller"). The owners of those four lots access their properties along a private road, running east-west along the southern boundary of the subdivision and lying within the subdivision property.

The 1995 deed created that 50-foot-wide access easement for the benefit of three of those lots, including Lot 8. The deed recited, as relevant here, that the grantors

> do hereby create and establish easements for ingress and egress . . . as shown on the Plat, designated thereon as . . . "50' private access easement for the exclusive use of adjoining lots 4, 7 and 8", for the use and benefit of the lots served thereby.

The deed also conveyed three lots (Parcels A, B, and C) to Catoctin Ridge for use as common space, "together with easements for ingress and egress across the access easements, including those for Lots 5, and the adjoining Lots 4, 7 and 8." The access easement at issue was located

---

[1] We review the facts in the light most favorable to appellee George L. Biller, the prevailing party below. *E.g.*, *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 (2022).

within Parcel A. The attached plat showed the access easement and identified Lot 8 as then-owned by "Charlotte H. Biller."

In September 1996, the developer executed a separate deed granting Charlotte the same 50-foot access easement referenced in the 1995 deed and plat. The 1996 deed stated that the 50-foot access easement connects to a 10-foot easement that Charlotte acquired to use a road over Lot 9A, directly to the east of her lot.

In February 1999, Charlotte granted a one-half undivided interest in Lot 8 to Biller as tenants in common. She granted the remainder of the fee interest to Biller in December 2002. Biller started building his house on Lot 8 in 1995, and he began living there in 1995 or 1996.[2] Since then, he has used the road crossing both Lot 9A and Parcel A to access his home. So did others, including Amazon delivery drivers, pizza delivery drivers, Verizon Fios technicians, neighbors, and friends.

In early 2021, Catoctin Ridge learned that some of the trees on Parcel A within Biller's easement had been cut down. Ryan Schelske was the president of Catoctin Ridge's board. Over the next few months, Schelske noticed that more trees had been cut down. Biller approached him one day and revealed that he had cut down the trees to clear space for a recreational vehicle he intended to park in the easement.

Schelske told Biller that Catoctin Ridge had engaged the board's lawyer out of concern that the tree cutting violated the association's obligations under a tree-conservancy agreement with Loudoun County. The lawyer sent Biller a letter stating that Catoctin Ridge did not wish to restrict him from using his driveway but requesting that Biller stop cutting down trees. Later,

---

[2] At trial, Biller testified that he or members of his family had lived on Lot 8 since 1977 and had previously used more of the surrounding land. His limited use of the Lot 9A/Parcel A access easement began when the 1995 deed "corrected" his easement.

however, Catoctin Ridge determined with its lawyer that the entire easement "was never validly issued."

Catoctin Ridge sued Biller in August 2021 for a declaratory judgment that the 1995 and 1996 deeds had not conveyed a valid easement to Charlotte and an injunction to stop Biller from using the easement. After the court overruled Biller's plea in bar, Biller filed an answer asserting, among other defenses, "easement by prescription," "easement by necessity," "easement [by] recorded plat" or "deed," "equitable estoppel," and "laches."

At the one-day bench trial in March 2024, Biller moved to strike Catoctin Ridge's evidence on the ground that the 1995 deed and plat granted an express easement. Catoctin Ridge responded, among other things, that the easement was invalid under the stranger rule in *Shirley* because Charlotte was not a party to the deed. The court asked Biller, "do we even have to go there if you have an easement by prescription?" After Biller's counsel represented that Biller intended to testify to his "exclusive, continuous use" of the easement, the court took the motion to strike under advisement.

Biller then testified that he had used the easement to access his home since 1995 or 1996, that others regularly used it for the same purpose, and that he had never stopped using it. He said that there was no other way to access Lot 8 without using the easement. Biller also elaborated on his plan to park an RV on the easement. On cross-examination, Biller admitted that he used the easement only with "the belief that [the 1995 deed and plat] gave [him] the express right to use [it] as an access easement."

Biller also presented the testimony of his neighbor, Henry Davison, the owner of Lot 9A. Davison testified that Biller's easement over Davison's property could not, in its current form, replace the easement over Parcel A. Davison added that Biller's neighbors also used the road over Parcel A to access their own homes, consistent with the 1995 deed and plat.

During closing argument, Catoctin Ridge reasserted that the express-easement claim was invalid under the stranger rule. It added that the 1996 deed was also invalid because the developer at that point did not own the land over which it purported to grant the easement. Catoctin Ridge also argued that Biller's prescriptive-easement claim was barred by *Chaney v. Haynes*, 250 Va. 155 (1995), which held that "[u]se of property under the mistaken belief of a recorded right cannot be adverse as long as such mistake continues," *id.*at 159.

Ruling from the bench, the trial court found that the 1995 deed "clearly references rights of easement and is intended to relate those rights as written in the deed to a corresponding recorded plat that is incorporated into the deed. It clearly identifies Charlotte Biller. It clearly identifies Lot 8 as it identifies the remainder of the subdivided property." The court found the stranger rule inapplicable because of the "very clear intention" in the deed to create an easement in favor of Charlotte. In the alternative, the court found that Biller had established a prescriptive easement. The court further ruled, also in the alternative, that Catoctin Ridge was "estopped from denying the existence of this [easement,] as they sat on their rights for a lengthy period of time, over 20 years. And I think at a minimum they are estopped from denying it. And at a maximum they are barred by the doctrine of laches." The court denied Biller's request for attorney fees, finding that Catoctin Ridge "acted in good faith. I just think they were late." The court did not address the validity of the 1996 deed.

The final order recognized "an express 50' private access easement for ingress, egress, and installation and maintenance of utilities exist[ing] for the benefit of the Biller parcel" as recognized in the 1995 deed of subdivision. It also recognized, alternatively, "that the Biller parcel is entitled to an easement by prescription," having the same bounds as the one referenced

in the 1995 deed.  The order denied Biller's request for attorney fees.  It did not mention the court's bench rulings on equitable estoppel or laches.

Catoctin Ridge noted a timely appeal.  Biller raised cross-error.

ANALYSIS

Catoctin Ridge's seven assignments of error can be grouped into three categories: (1) that the express-easement claim under the 1995 deed is barred by the stranger rule in *Shirley*; (2) that the prescriptive-easement claim is barred by the rule in *Chaney* that use of an easement under a mistaken belief of a recorded right is not adverse; and (3) that Biller failed to offer evidence or argument in support of his equitable estoppel or laches defenses.  Biller's cross-error argues that the trial court erred in denying his request for attorney fees.

Obliged "'to decide cases on the best and narrowest grounds available,' . . . we look for the best and *fewest* grounds on which to resolve this appeal." *Theologis v. Weiler*, 76 Va. App. 596, 603 (2023) (quoting *Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022)).  Because the trial court correctly found that the 1995 deed granted an express easement to the owner of Lot 8 and did not violate the stranger rule, we do not reach Catoctin Ridge's other assignments of error.  That leaves only Biller's cross-error for attorney fees, which is barred under Rule 3:25.

> A. *Because the 1995 deed expressly granted the access easement to the owner of Lot 8, it was not an "exception" or "reservation" subject to the stranger rule.*

The common-law stranger rule provides that "a reservation or exception in favor of a stranger to the instrument does not create in the stranger any right or interest in the property being conveyed." *Shirley*, 259 Va. at 515.  "A reservation is 'the creation of a new right or interest . . . by and for the grantor, in real property being granted to another.'" *Id.* at 517 (alteration in original) (quoting *Black's Law Dictionary* 1309 (7th ed. 1999)).  "In contrast to a 'reservation,' an 'exception' excludes or withdraws a pre-existing right from the property

conveyed that would otherwise pass to the grantee." *Id.* at 517 n.5. "Frequently, the words 'reserved' and 'excepted' are used interchangeably." *Id.*

The origins of the stranger rule lurk in "the cobwebs of history." 4 Michael Allan Wolf, *Powell on Real Property* § 34.04[5], at 34-32 (2024). A 1648 English treatise said that a "good reservation . . . must be made to one of the grantors and not to a stranger to the deed." William Sheppard, *The Touch-Stone of Common Assurances, or, A Plain and Familiar Treatise, Opening the Learning of the Common Assurances or Conveyances of the Kingdome* 80 (1648). Sheppard's *Touchstone*[3] was sometimes cited as authority for the rule. *E.g.*, *Wickham v. Hawker*, 7 M. & W. 63, 70, 151 Eng. Rep. 679, 683 (Ex. 1840); *Moore v. Earl of Plymouth*, 7 Taunt. 614, 619, 129 Eng. Rep. 245, 247 (C.P. 1817). Perhaps the best modern rationale to explain the rule is that, since a "stranger has no interest in the land to be excepted from the grant, and likewise none from which a reservation can be carved out, an exception or reservation in his favor [is] therefore deemed quite impossible." W.W. Allen, *Reservation or Exception in Deed in Favor of Stranger*, 88 A.L.R. 2d 1199, 1202 (1963).

The stranger rule was abolished in England in 1925. *See* Law of Property Act 1925, 15 & 16 Geo. 5 ch. 20, § 65 (Eng.); *Shirley*, 259 Va. at 517 n.4. Many States in our country have also abolished the rule, either by statute or as a matter of evolving common law, though several States have retained it. *See generally Powell on Real Property*, *supra*, § 34.04[5], at 34-32 to 34-33 & nn.35-36 (collecting citations); 9 David A. Thomas, *Thompson on Real Property* § 82.09(c)(2), at 632-34 & nn.366-70 (3d Thomas ed. 2011) (collecting citations).

---

[3] Later editions omitted the hyphen in *Touchstone*. See 1 William Sheppard, *The Touchstone of Common Assurances: or, A Plain and Familiar Treatise, Opening the Learning of the Common Assurances or Conveyances of the Kingdom* (1st Am. ed. 1808).

Applying Virginia's common-law-reception statute, *Shirley* held that the stranger rule "continues 'in full force' in this Commonwealth and is 'the rule of decision.'" 259 Va. at 518 (quoting Code § 1-10 [now Code § 2-100]).[4] The grantor there expressly "reserve[d]" a life estate to her daughter when transferring the property to a trust, but the daughter was not a party to the deed. 259 Va. at 519-20. The Court acknowledged "that a deed should be construed to give effect to the grantor's intent." *Id.* at 517. But "the grantor's intention cannot prevail if it is 'in conflict with some principle of law or rule of property.'" *Id.* (quoting *Fitzgerald v. Fitzgerald*, 194 Va. 925, 929 (1953)). The Court held that, even if the grantor had "intended to convey a life estate" to her daughter, the conveyance was barred by the stranger rule. *Id.* at 518. And whether the stranger rule should be abolished was up to the General Assembly to decide, not the judiciary. *Id.*

As Catoctin Ridge acknowledged at oral argument, the stranger rule applies only to reservations and exceptions, not to grants. Indeed, the Court in *Shirley* pointed out that the grantor there could have drafted around the stranger rule if she had only "named [her daughter] as a grantee in the 1990 deed and used words of grant to convey a life estate to [her]. Obviously, in that situation, [the daughter] would not have been a 'stranger' to the deed." *Id.* at 520 n.8; *accord* Code § 55.1-119 ("An immediate estate or interest in or the benefit of a condition

---

[4] We note an important caveat to *Shirley* that it did not reach the question of whether "the common law [stranger] rule is inconsistent with the General Assembly's intent reflected in Code § 55-22 [now Code § 55.1-119] to protect third-party beneficiaries of written instruments." *Shirley*, 259 Va. at 517. The appellant defaulted that argument by failing to raise it in the trial court. *Id.* at 520 n.9. As none of the parties has raised that point here, we likewise express no opinion on whether Code § 55.1-119 modified the stranger rule in Virginia. This qualifies as "an important question of first impression in Virginia that should be decided only after full briefing." *Moncrieffe v. Deno*, 76 Va. App. 488, 503 (2023).

- 8 -

respecting any estate may be taken by a person under an instrument, although he is not a party to such instrument . . . .").[5]

"Easements may be created by express grant or reservation, by implication, by estoppel or by prescription." *Bunn v. Offutt*, 216 Va. 681, 684 (1976). Biller argues that the language of the 1995 deed should be construed to expressly *grant* the access easement to Lot 8, while Catoctin Ridge urges that we characterize the easement as a *reservation* or *exception*. Catoctin Ridge notes that the 1995 deed used the term "grant" in other places but not when creating the access easement.

Determining whether the 1995 deed grants an express easement "presents a pure question of law." *Beach v. Turim*, 287 Va. 223, 228 (2014). "[A] provision in an instrument claimed to create an easement must be strictly construed, with any doubt being resolved against the establishment of the easement." *Burdette v. Brush Mt. Estates, LLC*, 278 Va. 286, 297 (2009) (quoting *Chesapeake & Potomac Tel. Co. v. Prop. One, Inc.*, 247 Va. 136, 139 (1994)). But "[n]either statutory nor common law requires a grantor to employ words of art so long as 'the intention to "grant" is so manifest on the face of the instrument that no other construction could be put upon it.'" *Corbett v. Ruben*, 223 Va. 468, 471 (1982) (quoting *Albert v. Holt*, 137 Va. 5, 10 (1923)).

In light of the Supreme Court's precedent in *Corbett*, we agree with Biller that the 1995 deed expressly granted the access easement to the owner of Lot 8. The 1995 deed provided that

---

[5] *See also* 4 *Tiffany Real Prop.* § 974 (3d ed. 2025) ("If one conveying land to A undertakes by the same instrument to create an easement in the land in favor of B, there is, it would appear, not a reservation of an easement in favor of B but a grant thereof to him; that is, by one and the same instrument, the grantor undertakes to convey land to one person and an easement in the land to another."); *Combs v. Hounshell*, 347 S.W.2d 550, 555 (Ky. 1961) ("[T]he distinction between a 'conveyance' to a third party and a 'reservation' in his favor is tenuous and artificial and has long outlived the reason for its existence in the first place. Yet it does exist, and what we have in this case is a conveyance, not a reservation.").

the grantors "do hereby create and establish easements for ingress and egress . . . as shown on the Plat, designated thereon as . . . '50' private access easement for the exclusive use of adjoining lots 4, 7 and 8', for the use and benefit of the lots served thereby." In *Corbett*, the Supreme Court squarely held that nearly identical words—"hereby create and establish"—"signify such an intent" to expressly grant an easement. 223 Va. at 471. Catoctin Ridge does not mention *Corbett*, but we find it dispositive.

As a fallback argument, Catoctin Ridge claims that no easement could have been validly conveyed by the 1995 deed because it referred only generally to Lot 8 and did not specifically name Charlotte as the owner. Although the attached plat showed that Charlotte owned Lot 8 at the time, Catoctin Ridge insists that the plat cannot be considered to cure the asserted lack of specificity in the deed.

But the 1995 deed by itself, even without reference to the plat, showed that the owner of Lot 8 was a grantee of the easement. Virginia follows "the ancient maxim that grantees need not be specifically designated by name if they are sufficiently described 'so as to be distinguished from all others.'" *Id.* at 472 (quoting *Thomas v. Marshfield*, 27 Mass. (10 Pick.) 364, 367 (1830)). In *Corbett*, for instance, the grantees of the easement were described simply as "the owner and occupants of the apartments located on [parcel #2]." *Id.* at 470 (alteration in original). The Court found that description "sufficient to identify the intended recipients of the grant." *Id.* at 472. The same is true of the deed here, which made clear that the easement was conveyed "'for the exclusive use of adjoining lots 4, 7 and 8', for the use and benefit of the lots served thereby."

This is not a case like *Beach*, where the easement was invalid because the deed "merely state[d] 'easements are hereby created as shown on the attached plat.'" 287 Va. at 229. That deed failed the test that, "[t]o create an express easement, the property which benefits from the

- 10 -

easement must be identified in some manner." *Id.* at 230. Likewise, in *Burdette*, the deed was insufficient to grant the easement when it recited only that it was "subject to all easements" shown in the attached plat. 278 Va. at 289-90. The vagueness of the grants in each of those deeds could not be cured by the attached plat, for "[w]hen a deed incorporates a plat by reference, the plat is considered part of the deed itself *but only for descriptive purposes* to establish the metes and bounds of the property being conveyed." *Beach*, 287 Va. at 229 (alteration in original) (quoting *Burdette*, 278 Va. at 298).

As in *Corbett*—and unlike in *Beach* and *Burdette*—the deed here plainly identified the lots that would enjoy the easement, including Lot 8. That the plat named Charlotte Biller as the owner of Lot 8 was not required to identify the grantee, just as it sufficed in *Corbett* that the deed identified the grantees generally as "the owner and occupants of the apartments located on [parcel #2]." 223 Va. at 470 (alteration in original).

*B. Biller waived his attorney-fee claim under Rule 3:25.*

Biller argues in his cross-error that the trial court abused its discretion when it denied his request for attorney fees after ruling in his favor on the merits. He contends that a trial judge, sitting as a chancellor in equity, generally has the authority to award attorney fees to the prevailing party. He advocates that general rule as an extension of the Supreme Court's holding in *Prospect Development Co. v. Bershader*, 258 Va. 75 (1999), that "in a fraud suit, a chancellor, in the exercise of his discretion, may award attorney's fees to a defrauded party." *Id.* at 92.

But we agree with Catoctin Ridge that Biller waived his attorney-fee claim by failing to adequately plead it below. As applied to defendants, Rule 3:25 requires as a prerequisite to recovering attorney fees that the defendant "must include a demand therefor . . . in a responsive pleading filed pursuant to Rule 3:8." Rule 3:25(b). Not only that, "[t]he demand must identify the basis upon which the party relies in requesting attorney fees." *Id.* "The failure of a party to

- 11 -

file a demand as required by this rule constitutes a waiver by the party of the claim for attorney fees, unless leave to file an amended pleading seeking attorney fees is granted under Rule 1:8." Rule 3:25(c).

Biller failed to request attorney fees in compliance with Rule 3:25. The answer he filed after his plea in bar was overruled did not "include a demand for attorney fees." Rule 3:25(b). And although Biller included a general request for attorney fees in his plea in bar, the plea was overruled, and the plea in any event did not "identify the basis upon which [Biller] relie[d] in requesting attorney fees," as Rule 3:25(b) required. Catoctin Ridge was entitled to assume that the attorney-fee request there was unenforceable "boilerplate." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 293 (2022).

"Rule 3:25 was recommended by the Boyd-Graves Conference to improve the procedures for handling attorney-fee claims and to reduce potential traps for 'unwary practitioners.'" *Id.* at 292 n.6 (quoting 2007 *Boyd-Graves Study of Attorney's Fee Claims in Civil Litigation* 1, https://perma.cc/FM7R-67JJ ["2007 *Boyd-Graves Report*"]). In particular, the pleading requirement in subsection (b) was "intended to require the issue of availability of attorney[] fees to be addressed *early* on in the litigation." 2007 *Boyd-Graves Report*, *supra*, at 2 (emphasis added). By waiting until the close of trial to argue his attorney-fee claim, Biller denied Catoctin Ridge the opportunity to challenge the grounds earlier in the litigation. Indeed, Biller did not cite any legal authorities in support of his attorney-fee claim until his appellee's brief here.

"Rule 3:25 . . . is consistent with the fundamental tenets . . . that no litigant may recover on a right not [pleaded], and that '[t]he basis of every right of recovery . . . is a pleading' setting forth the basis for granting the relief sought." *Graham v. Cmty. Mgmt. Corp.*, 294 Va. 222, 229 (2017) (fourth alteration in original) (footnote omitted) (quoting *Allison v. Brown*, 293 Va. 617,

626 (2017)).  Because Biller failed to properly demand attorney fees or plead the basis on which fees could be awarded, he waived his attorney-fee claim.

CONCLUSION

The trial court correctly found that the 1995 deed expressly granted the 50-foot access easement to the owner of Lot 8.  Because we affirm the finding of an express easement under the 1995 deed, we do not reach the alternative grounds cited by the trial court—prescription, estoppel, and laches.  Nor do we reach whether the 1996 deed was valid.  We reject Biller's attorney-fee claim under Rule 3:25.

*Affirmed*.